869 P.2d 279

Timothy MICHAELS, Plaintiff–Appellant,

v.

ANGLO AMERICAN AUTO AUCTIONS, INC., d/b/a Albuquerque Auto Auction, Defendant–Appellee.

No. 21184.

Supreme Court of New Mexico.

Feb. 10, 1994.

## OPINION

FRANCHINI, Justice.

Today we decide whether an employee who alleges that he or she was wrongfully discharged in retaliation for filing a workers' compensation action has a cause of action independent from that set out in NMSA 1978, Section 52–1–28.2 (Repl.Pamp.1991). We hold that plaintiff may assert a retaliatory discharge claim independently of and in view of the policy set out by Section 52–1–28.2. We reverse the district court's dismissal of plaintiff Michaels's complaint for failure to state a claim pursuant to SCRA 1986, 1–012(B)(6) and answer questions certified to us by our Court of Appeals.

We assume the truth of the facts alleged in the complaint for purposes of a motion to dismiss for failure to state a claim. *Castillo v. County of Santa Fe,* 107 N.M. 204, 205, 755 P.2d 48, 49 (1988). Michaels worked for Anglo American Auto Auctions, Inc. as an auto painter in the body shop of the Albuquerque Auto Auction. In the spring of 1992, Michaels contacted Anglo American about filing a workers' compensation claim for health problems including skin and kidney disorders caused by exposure to chemicals used to prime and paint automobiles. In a subsequent workers' compensation claim, Michaels alleged that his injuries occurred because the American Auto Auction failed to use adequate safety devices, precautions, and warnings to prevent hazardous levels of exposure to paints and solvents he used everyday in the body shop. Michaels sought disability benefits as well as a safety device enhancement penalty pursuant to NMSA 1978, Section 52–1–10 (Repl.Pamp.1991).

On May 18, 1992 Anglo American discharged Michaels from his position as an auto painter. Michaels contends the discharge was in retaliation for exercising his rights under the Workers' Compensation Act

(the Act). On September 16, 1992 Michaels filed suit for retaliatory discharge seeking compensatory and punitive damages. Upon Anglo American's motion, the district court dismissed Michaels's complaint. The Court of Appeals certified this case to us pursuant to NMSA 1978, Section 34–5–14(C)(2) (Repl. Pamp.1990), noting that it involved "the issue of whether the [Act] provides the exclusive remedy" for a worker's claim against an employer for damages resulting from the employer's retaliatory discharge of the worker for filing a worker's compensation claim.

I.

[redacted] The tort of retaliatory discharge was first recognized in this state by our Court of Appeals in *Vigil v. Arzola,* 102 N.M. 682, 688, 699 P.2d 613, 619 (Ct.App.1983), *rev'd in part on other grounds,* 101 N.M. 687, 687 P.2d 1038 (1984), *modified by Boudar v. E.G. & G.,* 106 N.M. 279, 280–81, 742 P.2d 491, 492–93 (1987), *and modified by Chavez v. Manville Prods. Corp.,* 108 N.M. 643, 649–50, 777 P.2d 371, 377–78 (1989). In *Chavez,* we adopted the *Vigil* court's standard of recovery for retaliatory discharge:

> "For an employee to recover under this new cause of action, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn."

*Chavez,* 108 N.M. at 647, 777 P.2d at 375 (quoting *Vigil,* 102 N.M. at 689, 699 P.2d at 620.) "The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a 'clear mandate of public policy.'" *Shovelin v. Central N.M. Elec. Coop.,* 115 N.M. 293, 303, 850 P.2d 996, 1006 (1993) (quoting *Vigil,* 102 N.M. at 688, 699 P.2d at 619). In *Shovelin* we described several categories sufficient to support a claim of retaliatory discharge including legislation that defines public policy and provides a remedy for violation of that policy and legislation that protects employees but does not specify a remedy. *Id.* As to the latter, the employee would seek an implied remedy. *Id.*

In *Williams v. Amax Chemical Corp.,* 104 N.M. 293, 294, 720 P.2d 1234, 1235 (1986), we held that an employee discharged for exercising rights afforded by the Act had no retaliatory discharge claim.

> Although the *Vigil* court determined that a cause of action should lie when the discharge of an employee contravenes some clear mandate of public policy, when an Act is sui generis, public policy, other than that reflected in the Act, is generally not to be invoked.

*Id.* Both our court in *Williams* and the Court of Appeals in *Bottijliso v. Hutchison Fruit Co.,* 96 N.M. 789, 635 P.2d 992 (Ct.App. 1981), held that any recognition of a tort for retaliatory discharge of an employee who files a worker's compensation claim should be done by the legislature. *Williams,* 104 N.M. at 294, 720 P.2d at 1235; *Bottijliso,* 96 N.M. at 794–95, 635 P.2d at 997–98. As indicated below, we now disapprove this holding.

In January 1991, an amendment to the Act entitled "Retaliation against employee seeking benefits; civil penalty" became effective. Section 52–1–28.2. It states in part:

> A. An employer shall not discharge, threaten to discharge or otherwise retaliate in the terms or conditions of employment against a worker who seeks workers' compensation benefits for the sole reason that that employee seeks workers' compensation benefits.

*Id.* The provision requires an employer who violates Subsection A to rehire the employee (provided the worker agrees to be rehired) and pay a civil penalty to the workers' compensation administrative fund of up to five thousand dollars for each violation. *See* Section 52–1–28.2(B)–(D).

In enacting Section 52–1–28.2 the legislature expressly set out the clear mandate of public policy that was missing when *Williams* and *Bottijliso* were decided. We must now decide whether the remedy set out in Section 52–1–28.2 is exclusive.

The employer argues that the remedy provided within the Act for retaliatory discharge was intended by the legislature to be the sole and exclusive remedy for all workers allegedly discharged for seeking compensation bene-

fits. The employer points to the following language in the Act:

> The Workers' Compensation Act provides exclusive remedies. No cause of action outside the Workers' Compensation Act shall be brought by an employee or dependent against the employer or his representative, including the insurer, guarantor or surety of any employer, for any matter relating to the occurrence of or payment for any injury or death covered by the Workers' Compensation Act.

NMSA 1978, Section 52–1–6(E) (Repl. Pamp.1991).

This general exclusivity provision of the Act does not compel the conclusion that Section 52–1–28.2 is exclusive. Although the general exclusivity provision is broadly construed, its reach is not unlimited. *See Gallegos v. Chastain*, 95 N.M. 551, 554, 624 P.2d 60, 63 (Ct.App.1981) (implying that exclusivity provision would not bar action where employer possessed actual intent to injure employee). Although the first sentence of Section 52–1–6(E) states that the Act provides exclusive remedies, the second sentence limits the scope of actions pertaining to worker injury or death to the Act itself. Thus, in *Russell v. Protective Insurance Co.*, 107 N.M. 9, 12, 751 P.2d 693, 696 (1988), we limited the scope of Section 52–1–6 to permit a cause of action "asserted against a workers' compensation insurer for damages unrelated to the workers' physical or psychological job-related disability." Similarly, issues involving the hiring and firing of employees are "independent of, and separate from, the cause of action contemplated by the Workers' Compensation Act." *See id.* It is unreasonable to expect the legislature to amend the Act to include a pervasive scheme to address hiring and firing claims when ample rights and remedies already exist under the common law. Further, Section 52–1–28.2 contains no express language of exclusivity, nor does it even contain language strongly suggestive of exclusivity. Had the legislature intended the statute to be exclusive it would have been very simple to have expressly said so. In construing a statute we look "to the object the legislature sought to accomplish and the wrong it sought to remedy." *Lopez*

*v. Employment Sec. Div.*, 111 N.M. 104, 105, 802 P.2d 9, 10 (1990). Thus, we cannot accept a construction of Section 52–1–6 that would force employees to choose between their jobs and seeking remedies under the Act. To bar an action on the basis of the language of the Act itself, the fundamental purpose of which is to ensure rights and remedies to employees, would be illogical. To the extent it is inconsistent, we overrule our holding in *Williams*.

Further reasons why we conclude Section 52–1–28.2 is not the exclusive means of redress concern the remedies set forth in the statute. It is not just "the presence or absence of a remedy which is significant; rather, the comprehensiveness, or adequacy, of the remedy provided is a factor which courts and commentators have considered in deciding whether a statute provides the exclusive remedies for retaliatory discharge in violation of public policy." *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wash.2d 46, 821 P.2d 18, 25 (1991) (en banc).

While Section 52–1–28.2 sets forth essentially two remedies—the requirement that an employee is rehired and the civil fine of up to five thousand dollars paid to the workers' compensation administration fund—these two remedies do not adequately compensate the wrong caused by the conduct. A worker wrongfully discharged, even if eventually rehired, will incur damages in the form of lost wages from the date of discharge to the date of rehiring. If the issue is contested it could take up to a year or more before he or she is reemployed. Additionally, if the employee were to search for a new job, there would be the cost and inconvenience of searching for a new job or moving costs. Awarding civil damages not only vindicates the state's interest in enforcing public policy but also adequately redresses the harm to the individual naturally flowing from the violation of public policy. "It is more appropriate to fashion the elements of damages to reflect the objective of the cause of action, that is, to encourage job security." *Vigil*, 102 N.M. at 689, 699 P.2d at 620.

If the remedy of reinstatement were to be construed as the exclusive remedy, the statute would be essentially meaningless. An

employer could successfully avoid rehiring a worker for an unreasonable length of time with little or no sanction. Such a result would undermine the state's interest in protecting employees from retaliatory discharge by their employers. It would also fail to remedy the harm to the individual naturally caused by the violation of public policy. "An implied remedy is given to the wrongfully discharged worker because absent such a remedy the statue would vindicate the State's interest without addressing the rights of the individual harmed by the violation of public policy." *Shovelin,* 115 N.M. at 305, 850 P.2d at 1008.

■ Finally, the legislature enacted Section 52–1–28.2 as remedial legislation in derogation of the common law. We assume that the legislature is well informed as to the existing statutory and common law, and that it does not intend to enact useless statutes. *State ex rel. Bird v. Apodoca,* 91 N.M. 279, 284, 573 P.2d 213, 218 (1977). " 'Where a statute is both remedial and in derogation of the common law it is usual to construe strictly the question of whether it does modify the common law, but its application should be liberally construed.' " *Albuquerque Hilton Inn v. Haley,* 90 N.M. 510, 512, 565 P.2d 1027, 1029 (1977) (quoting *In Re Gossett's Estate,* 46 N.M. 344, 351, 129 P.2d 56, 60 (1942)). Liberal construction is necessary to effect the statute's remedial purpose:

> "There are three points to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy; that is, how the common law stood at the making of the act; what the mischief was, for which the common law did not provide; and what remedy the parliament hath provided to cure this mischief. And it is the business of the judges so to construe the act as to suppress the mischief and advance the remedy."

*Id.* (quoting 1 William Blackstone, Commentaries *87).

The obvious purpose of Section 52–1–28.2 is to protect employees from being discharged in retaliation for filing a workers' compensation claim. We should broadly construe the statute "to suppress the mischief and advance the remedy." Permitting access to existing common law remedies, including civil damages, best suits the remedial purpose of the statute as well as its underlying policy.

By recognizing a claim for retaliatory discharge we are joining the majority of courts around the country that recognize this tort.

> The great majority of jurisdictions that have dealt with the matter have, by judicial decision or statute, and sometimes, both, recognized the tort of retaliatory discharge for filing a workers' compensation claim. A small and shrinking minority hold *contra,* refusing to recognize this exception to the employment-at-will rule.

2A Arthur Larson, *The Law of Workmen's Compensation* § 68.36(a) (1993) (footnotes omitted). Moreover, as Larson states, "[t]he majority holding is that the remedy created by a retaliatory discharge statute is not exclusive, whether that remedy is civil or criminal." *Id.* § 68.36(b) (footnote omitted). The penal and administrative remedies that are provided by Section 52–1–28.2 will clearly be augmented by recognition of a civil remedy. "A common law action for wrongful discharge in this context will effectuate statutory objectives and complement the legislative and administrative policies which undergird the workers' compensation laws." *Lally v. Copygraphics,* 85 N.J. 668, 428 A.2d 1317, 1318 (1981).

We agree with the following statement from the seminal case of *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425, 427 (1973), the first case to recognize a wrongful discharge action for firing an employee for filing a worker's compensation claim: "[F]or the goals of the Act to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal."

In view of the foregoing we reverse the order of the district court dismissing Michaels's claim and remand this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

RANSOM, C.J., and MONTGOMERY, J., concur.