1999-NMCA-091

985 P.2d 173

Maria Stella FLORES and Dan
Flores, wife and husband,
Plaintiffs–Appellants,

v.

Dorothy DANFELSER, individually and
as Secretary of Human Services Department, Sandra Corriveau, individually
and as District Manager of the Income
Support Division, and New Mexico Human Services Department, Defendants–
Appellees.

No. 19,157.

Court of Appeals of New Mexico.

June 4, 1999.

572

Carmen E. Garza, Joseph M. Holmes, The Personal Injury Law Clinic, Las Cruces, for Appellants.

Douglas A. Baker, Martha G. Brown, Mary T. Torres, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellees.

## OPINION

DONNELLY, J.

{1} Plaintiffs Maria Stella Flores (hereafter Stella Flores) and Dan Flores, her husband, appeal from an order dismissing their tort claims and claims alleging a violation of their civil rights under 42 U.S.C. § 1983 (1994) filed against Defendants. Plaintiffs have asserted nine claims on appeal which we consolidate and discuss as follows: (1) whether Plaintiffs' tort claims are barred under the exclusivity provisions of the Workers' Compensation Act; and (2) whether Plaintiffs alleged viable claims against Defendants under 42 U.S.C. § 1983. For the reasons discussed herein, we affirm.

## BACKGROUND

{2} Stella Flores was employed as an income support specialist with the New Mexico Human Services Department (HSD) in Doña Ana County, New Mexico. On February 13, 1996, Theodore Osborne, an individual who had been receiving food stamp allotments, went to the district office, pushed his way past the doorway of the public waiting room, and went into an area designated for staff offices. Osborne, believing that Stella Flores was responsible for reducing his benefits, entered her office and physically attacked her and stabbed her repeatedly. Stella Flores was taken to the hospital and Osborne was subsequently apprehended and criminally charged for the assault.

{3} After the attack, HSD began paying Stella Flores workers' compensation and medical benefits. On May 7, 1997, Plaintiffs filed suit against Defendants Dorothy Danfelser, individually, and as Secretary of HSD; Sandra Corriveau, individually, and as district manager of the Doña Ana County office of the Income Support Division; and the HSD. Plaintiffs alleged, among other things, that Defendants were "aware ...

that security measures at the ... branch office ... were inadequate"; that "[d]espite having knowledge of the dangers of allowing clients and the general public access to the office area where Stella Flores ... worked, Defendants made a deliberate and intentional policy decision to allow such access"; that "[d]espite recommendations ... to implement such security measures, ... Defendants failed to take any steps to implement such security measures"; and that Defendants' actions resulted from a "deliberate and intentional policy decision ... based upon a combination of economic and philosophical considerations."

{4} Plaintiffs' complaint contained five counts: Count I, a tort claim against HSD, Danfelser, and Corriveau under the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –29 (1976, as amended through 1996); Count II, against Danfelser and Corriveau, both individually and in their official capacities, alleging a violation of Stella Flores' constitutional rights under 42 U.S.C. § 1983; Count III, a claim against HSD alleging a violation of 42 U.S.C. § 1983; Count IV, a claim against all Defendants for intentional infliction of emotional distress; and Count V, a claim by Dan Flores, Stella's husband, against Defendants for loss of consortium.

{5} On July 2, 1997, Defendants filed a motion to dismiss for failure to state a claim. Following a hearing, the district court granted the motion and dismissed each of the claims against Defendants.

*ANALYSIS*

*Tort Claims*

{6} Plaintiffs assert that the district court erred in determining that the tort claims filed by Plaintiffs against Defendants were barred by the exclusivity provisions of the Workers' Compensation Act.

■ {7} In reviewing the dismissal of a complaint for failure to state a claim upon which relief may be granted, an appellate court applies the same analysis as the trial court, "accept[s] as true all facts well pleaded and question only whether the plaintiff might prevail under any state of facts provable under the claim." *California First Bank v. State,* 111 N.M. 64, 66, 801 P.2d 646, 648

(1990) (quoting *Gomez v. Board of Educ.,* 85 N.M. 708, 710, 516 P.2d 679, 681 (1973)).

■ {8} As a preliminary matter, we note that Plaintiffs contend that the district court did not treat Defendants' motion as one for a dismissal under Rule 1–012(B)(6) NMRA 1999; instead, they argue, it decided the motion as one for summary judgment and call upon this Court to therefore apply the appropriate standard of appellate review. However, upon our examination of Plaintiffs' complaint and the matters considered below, we conclude that the district court ruled based upon Plaintiffs' original complaint, not on matters outside the pleadings. *See Quintana v. Los Alamos Med. Ctr., Inc.,* 119 N.M. 312, 312–13, 889 P.2d 1234, 1234–35 (Ct.App. 1994); *Rummel v. Edgemont Realty Partners, Ltd.,* 116 N.M. 23, 25, 859 P.2d 491, 493 (Ct.App.1993). We accordingly apply the standard of review appropriate under Rule 1–012(B)(6).

■ {9} Based upon our review of the pleadings and the record before us, it is clear that the district court's decision determining that Plaintiffs' tort claims were barred by the exclusivity provisions of the Workers' Compensation Act was grounded upon its interpretation of NMSA 1978, § 52–1–6(C), (D), and (E) (1990, effective Jan. 1, 1992) and § 52–1–9 (1973). We discern no error in this ruling. Examination of the Workers' Compensation Act reveals several legislative provisions restricting the right of both employers and employees from pursuing other remedies involving claims arising out of work-related injuries. For example, Section 52–1–6 provides in applicable part:

C. Every worker shall be conclusively presumed to have accepted the provisions of the Workers' Compensation Act if his employer is subject to the provisions of that act and has complied with its requirements, including insurance.

D. Such compliance with the provisions of the Workers' Compensation Act ... shall be, and construed to be, *a surrender by the employer and the worker of their rights to any other method, form or amount of compensation ... or to any cause of action at law, suit in equity or*

*statutory or common-law right to remedy or proceeding whatever for or on account of personal injuries or death of the worker*.... [Emphasis added.]

E. The Workers' Compensation Act provides exclusive remedies. No cause of action outside the Workers' Compensation Act shall be brought by an employee or dependent against the employer or his representative, including the insurer, guarantor or surety of any employer, for any matter relating to the occurrence of or payment for any injury or death covered by the Workers' Compensation Act....

NMSA 1978, § 52–1–8 (1989) states in pertinent part that employers who have complied with the Act

shall not be subject to any other liability whatsoever for the death of or personal injury to any employee, except as provided in the Workers' Compensation Act....

Similarly, Section 52–1–9 provides in part:

The right to the compensation provided for in this act ... [is] in lieu of any other liability whatsoever, to any and all persons whomsoever, for any personal injury accidentally sustained or death resulting therefrom, shall obtain in all cases where the following conditions occur:

A. at the time of the accident, the employer has complied with the provisions thereof regarding insurance;

B. at the time of the accident, the employee is performing service arising out of and in the course of his employment; and

C. the injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

Finally, in declaring the legislative intent behind the statute, NMSA 1978, § 52–5–1 (1990, effective Jan. 1, 1991), makes clear that "[t]he workers' benefit system in New Mexico is based on a mutual renunciation of common law rights and defenses by employers and employees alike."

{10} In an effort to escape the force of these statutory provisions, Plaintiffs emphasize that their complaint rests in part on allegations that "the deliberate, intentional and aggravated assault and battery visited upon Stella Flores' person by Osborne placed [her] outside the course and scope [of her employment] and was not reasonably incident to her employment with HSD."

{11} On appeal, we review a district court's dismissal of a tort claim based upon the exclusivity provisions of the Workers' Compensation Act as a question of law. *See Gallegos v. State of N.M. Bd. of Educ.*, 1997–NMCA–040, ¶ 11, 123 N.M. 362, 940 P.2d 468 (appellate court reviews de novo questions of law decided by trial court). Applying this test to the case before us, we conclude that Plaintiffs' tort claims are barred by the exclusivity provisions of the Workers' Compensation Act. None of the exceptions to the exclusivity provisions contained in Section 52–1–9(C) and relied upon by Plaintiffs are applicable here. *Cf. Coates v. Wal–Mart Stores, Inc.*, 1999–NMSC–013, ¶ 24, 127 N.M. 47, 976 P.2d 999 (1999) ("The [Workers' Compensation Act] only covers work-related accidents and only injuries that fall within the act's coverage."); *Coleman v. Eddy Potash, Inc.*, 120 N.M. 645, 653, 905 P.2d 185, 193 (1995) (worker's claim against employer for spoliation of evidence is not barred by exclusivity provisions); *Michaels v. Anglo Am. Auto Auctions, Inc.*, 117 N.M. 91, 93, 869 P.2d 279, 281 (1994) (employee who alleges wrongful discharge in retaliation for filing workers' compensation claim is not barred by exclusivity provisions of Workers' Compensation Act).

{12} The relevant inquiry here is not whether Defendants Danfelser and Corriveau knew or should have known that Stella Flores might be injured by a third party, but whether they had an actual intent to injure Stella Flores. *See Coleman*, 120 N.M. at 653, 905 P.2d at 193 (test of whether claim forms basis for common-law action for damages turns on issue of whether employer or his or her alter ego had actual intent to injure worker); *Martin–Martinez v. 6001, Inc.*, 1998–NMCA–179, ¶ 6, 126 N.M. 319, 968 P.2d 1182; *Johnson Controls World Servs., Inc. v. Barnes*, 115 N.M. 116, 119, 847 P.2d 761, 764 (Ct.App.1993) (hereafter *Johnson Controls* ) (basis for subjecting employer to liability outside Workers' Compensation Act is an actual intent to injure the worker on

the part of employer); *cf. Maestas v. El Paso Natural Gas Co.,* 110 N.M. 609, 613, 798 P.2d 210, 214 (Ct.App.1990) (tort claims by worker against employer for injuries received by worker from explosion during course and scope of employment held precluded by exclusivity provisions of the interim Workers' Compensation Act).

{13} Plaintiffs emphasize several opinions of New Mexico's appellate courts that modify the exclusivity provisions of the Workers' Compensation Act. *See, e.g., Sabella v. Manor Care, Inc.,* 1996–NMSC–014, ¶ 16, 121 N.M. 596, 915 P.2d 901; *Michaels,* 117 N.M. at 93, 869 P.2d at 281; *Eldridge v. Circle K Corp.,* 1997–NMCA–022, ¶ 15, 123 N.M. 145, 934 P.2d 1074; *Gallegos v. Chastain,* 95 N.M. 551, 554, 624 P.2d 60, 63 (Ct. App.1981). Extending the reasoning of these opinions, Plaintiffs urge this Court to recognize a new exception to the exclusivity provisions, which would apply where an employer's negligent acts or omissions result in a third party inflicting an injury upon an employee.

{14} An analogous argument was presented in *Sanford v. Presto Manufacturing Co.,* 92 N.M. 746, 747, 594 P.2d 1202, 1203 (Ct.App.1979). In *Sanford* this Court reviewed an appeal from an order dismissing the plaintiff's tort claim against her employer. The plaintiff alleged that her employer had intentionally installed a commercial oven designed for baking Teflon on small appliances which created toxic fumes injurious to human health. The plaintiff asserted that she sustained injuries when she was exposed to the fumes in the workplace and that such exposure amounted to a battery upon her and which was intentionally or maliciously committed by the employer. The Court in *Sanford* rejected the plaintiff's argument and quoted with approval from 2A Arthur Larson, *Workmen's Compensation Law,* § 68.13 (1976), noting:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and

unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

> . . . .

> If these decisions seem rather strict, one must remind oneself that what is being tested here is not the degree of gravity or depravity of the employer's conduct, but rather the narrow issue of intentional versus accidental quality of the precise event producing injury . . . .

*Sanford,* 92 N.M. at 748, 594 P.2d at 1204.

{15} In accord with the rationale articulated by Larson, we conclude that the district court properly dismissed Plaintiffs' tort claims against Defendants. *See* Larson, *supra* § 68.13; *see also Johnson Controls,* 115 N.M. at 122, 847 P.2d at 767. We also determine that the exclusivity provisions of the Workers' Compensation Act apply with equal force, barring the claim of Dan Flores for loss of consortium and negligent infliction of emotional distress resulting from Stella Fores' injuries sustained during her employment with HSD. *See Singhas v. New Mexico State Highway Dep't,* 1997–NMSC–054, ¶ 10, 124 N.M. 42, 946 P.2d 645 (Exclusivity provisions of "'the Workers' Compensation Act [bar] an action for loss of consortium by the spouse of an injured worker.'" (quoting *Archer v. Roadrunner Trucking, Inc.,* 1997–NMSC–003, ¶ 16, 122 N.M. 703, 930 P.2d 1155)).

{16} Plaintiffs, although acknowledging the holding in *Johnson Controls* regarding the exclusivity provisions of the Workers' Compensation Act, argue that subsequent decisions of our Supreme Court and this Court have eroded the rationale and force of such holding. For example, they assert that our Supreme Court in *Harger v. Structural Services, Inc.,* 1996–NMSC–018, 121 N.M. 657, 661, 916 P.2d 1324, 1328; *Sabella,* 1996–NMSC–014, ¶ 16, 121 N.M. 596, 915 P.2d 901; *Coleman,* 120 N.M. at 653, 905 P.2d at 193; and *Michaels,* 117 N.M. at 93, 869 P.2d at 281, recognized specific exceptions to the exclusivity provisions of the Workers' Compensation Act. Similarly, Plaintiffs point out decisions of this Court recognizing exceptions to the exclusivity provisions of the Workers'

Compensation Act, such as *Eldridge,* 1997–NMCA–022, ¶ 15, 123 N.M. 145, 934 P.2d 1074; and *Gallegos* 95 N.M. at 554, 624 P.2d at 63. Pursuing this reasoning, Plaintiffs assert that the injuries suffered by Stella Flores were not accidentally sustained and that an exception to the exclusivity provisions of the Workers' Compensation Act should exist in instances where the acts or omissions of an employer which result in injury to an employee by a third party. Plaintiffs also argue that Stella Flores' injuries are not logically embraced within the definition of an "accidental injury." We do not believe these arguments correctly assess the decisions relied upon or the multiple declarations of legislative intent.

{17} Absent a demonstrated legislative intent to exclude specific acts of an employer from the exclusivity provisions of the Workers' Compensation Act, the litmus test for determining whether a worker's injury is controlled by the exclusivity rules is whether such injury stems from an actual intent on the part of the employer, or his or her alter ego, to injure the worker. *See Coleman,* 120 N.M. at 653, 905 P.2d at 193; *Martin–Martinez,* 1998–NMCA–179, ¶ 6, 126 N.M. 319, 968 P.2d 1182; *Johnson Controls,* 115 N.M. at 118, 847 P.2d at 763. Here, neither the pleadings nor the record support such showing.

{18} Perhaps anticipating the foregoing result, Plaintiffs alternatively argue that this Court should revisit *Johnson Controls* and limit or modify its holding. We decline such invitation, particularly in view of the fact that our Supreme Court in *Coleman* expressly approved the test articulated in *Johnson Controls,* noting that "[t]he test in such cases is whether the injury stems from an actual intent [by the employer] to injure the worker." *Coleman,* 120 N.M. at 653, 905 P.2d at 193.

{19} In their final challenge to the district court's dismissal of their tort claims against Defendants under the exclusivity provisions of the Workers' Compensation Act, Plaintiffs argue that Defendants' suspension of the payment of workers' compensation benefits when suit was filed herein constituted a waiver of the exclusivity provisions. We

disagree. Defendants' suspension of the payment of benefits was accompanied by a letter indicating that workers' compensation benefits would resume upon determination by the court that Stella Flores suffered a compensable injury. Moreover, Defendants' motion to dismiss Plaintiffs' complaint was expressly premised upon their contention that Plaintiffs' tort claims were governed by the Workers' Compensation Act.

{20} Because we determine that Plaintiffs' tort claims are controlled by the exclusivity provisions of the Workers' Compensation Act, we need not address Plaintiffs' assertion that Section 41–4–6 of the Tort Claims Act waives immunity from civil actions grounded upon claims of negligent operation or maintenance of public buildings.

## 42 U.S.C. § 1983 Claims

{21} Plaintiffs next challenge the district court's dismissal of their 42 U.S.C. § 1983 claims upon Defendants' assertion of qualified immunity.

{22} When a defendant raises the defense of qualified immunity in a motion to dismiss a claim alleging a violation of 42 U.S.C. § 1983, an appellate court, like the trial court, reviews the plaintiffs' pleadings to determine whether they have pleaded facts which, if true, set forth a violation of a clearly established statutory or constitutional right that a reasonable public official, viewed under an objective standard, would or should have known. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Williams v. Board of County Comm'rs,* 1998–NMCA–090, ¶ 22, 125 N.M. 445, 963 P.2d 522.

{23} We further note that qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806. Qualified immunity may be "effectively lost if a case is erroneously permitted to go to trial." *Id.* Where qualified immunity is raised as a defense to a claim under 42 U.S.C. § 1983, it is the plaintiff's burden to point to allegations of particular facts to

overcome the assertion of such defense. *See Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806. The Tenth Circuit has noted:

> [T]he plaintiff must do more than identify a clearly established legal test and then allege that the defendant has violated it. The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). (Citation omitted.)

■ {24} In *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), the United States Supreme Court set forth a two-part test for ascertaining whether or not a claim overcomes a defense of qualified immunity. First, the court inquires whether the plaintiff has alleged a violation of a clearly established constitutional right. This inquiry involves a purely legal question. *See id.* Second, the court inquires whether the existence of the legal right was clearly established when the alleged violation occurred. *See id.* at 233, 111 S.Ct. 1789; *cf. Williams*, 1998–NMCA–090, ¶ 23, 125 N.M. 445, 963 P.2d 522 (applying objective standard to determine whether defendant violated clearly established statutory or constitutional rights of which a reasonable person would have known); *Romero v. Sanchez*, 119 N.M. 690, 692, 895 P.2d 212, 214 (1995) (applying two-step analysis to summary judgment motion wherein defendant asserted qualified immunity defense).

{25} In asserting their claimed violation of 42 U.S.C. § 1983, Plaintiffs' complaint alleged, among other things, that:

> 84. Defendants had an affirmative constitutional duty to provide Stella Flores with a reasonably safe work environment at the Las Cruces branch office. . . .
>
> 85. Defendants had a custom or policy of failure to provide adequate security, install safety devices, provide training for employees, and implement policies for

dealing with violence in the workplace. Such policies or customs encouraged or implicitly authorized the attack which resulted in violation of Stella Flores' constitutional rights. The policies or customs promoted acts of violence such as perpetrated by Osborne, thereby creating a special danger and increasing the risk of harm to Stella Flores.

> . . . .

> 87. Defendants breached their affirmative duty to Stella Flores while she was at the workplace, and violated her constitutional rights under the Eighth Amendment to the United States Constitution, the due process clause and the equal protection clause, and Defendants further acted intentionally, willfully and with deliberate indifference in a grossly negligent manner and in wanton disregard of the consequences by establishing, following and maintaining policies or customs which resulted in the injuries to Stella Flores.

> 88. Defendants at all material times knew or should have known that the actual battery upon Stella Flores could reasonably have been expected to occur.

■ {26} In furtherance of their 42 U.S.C. § 1983 claims, Plaintiffs assert that a worker has a right to be protected from known or obvious acts of violence and that Defendants' disregard of such risks render them liable for such violation. Although New Mexico courts have long recognized the duty of employers to provide employees with a reasonably safe working environment, *see, e.g., Montoya v. Kennecott Copper Corp.*, 61 N.M. 268, 275–76, 299 P.2d 84, 89–90 (1956); *Stock v. Grantham*, 1998–NMCA–081, ¶ 8, 125 N.M. 564, 964 P.2d 125; *Hinger v. Parker & Parsley Petroleum Co.*, 120 N.M. 430, 441, 902 P.2d 1033, 1044 (Ct.App.1995), the duty of an employer to provide a safe working place does not, except in certain limited instances, rise to the level of a constitutionally protected right. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126–27, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (Due Process Clause is not a guarantee of safe working environment).

{27} Additionally, as observed by the United States Supreme Court in *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), as a general rule, the civil rights laws do not impose an affirmative duty to protect another from injury at the hands of a third party. *See id.* at 198–200, 109 S.Ct. 998; *see also Armijo ex rel. Chavez v. Wagon Mound Pub. Schs.,* 159 F.3d 1253, 1260 (10th Cir.1998); *Liebson v. New Mexico Corrections Dep't,* 73 F.3d 274, 276–77 (10th Cir.1996). This general rule, however, is not without recognized exceptions. *See Liebson,* 73 F.3d at 276–77; *Uhlrig v. Harder,* 64 F.3d 567, 572 (10th Cir.1995). As observed by the court in *Liebson,* two exceptions have been recognized:

> The first exception, known as the special relationship doctrine, "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual...." The second exception, sometimes referred to as the "danger creation" theory, provides that a state may also be liable for an individual's safety "if it created the danger that harmed the individual...."

*Id.,* 73 F.3d at 276 (quoting *Uhlrig,* 64 F.3d at 572 and *DeShaney,* 489 U.S. at 199–200, 109 S.Ct. 998) (citation omitted)).

{28} In order to bring an individual within the ambit of the "special relationship" exception, a plaintiff must show that the state has in some manner restrained an individual's freedom to act to protect himself from others by imposing restraints upon that individual's personal liberty. *See City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244–45, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (recognizing duty to furnish medical care to individual held in custody of police); *DeShaney,* 489 U.S. at 200, 109 S.Ct. 998 (if state restrains individual by placing restraints on individual's freedom to protect self, this may create "special relationship"); *Armijo ex rel. Chavez,* 159 F.3d at 1261 ("[A] plaintiff must show involuntary restraint by the government official in order to establish a duty to protect under the special relationship theory."); *cf. Youngberg v. Romeo,* 457 U.S. 307, 315–16, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (defendants have duty to protect involuntarily committed mental patients from harm). After careful review of Plaintiffs' pleadings, we conclude that Plaintiffs have failed to show that Defendants' actions were subject to the special relationship exception because Plaintiffs have not alleged that the state has restrained their freedom to act to protect themselves.

{29} Nor do the matters alleged by Plaintiffs indicate a basis for subjecting Defendants to liability under the creation of danger exception. *See Uhlrig,* 64 F.3d at 572 (where third party, not a state actor, causes the injury complained of, plaintiff must allege a constitutionally cognizable danger); *Henderson v. Gunther,* 931 P.2d 1150, 1160 (Colo.1997) (en banc) (defendants not liable under "creation of danger" exception to civil rights law to prison employee attacked and held hostage by inmate); *see also Collins,* 503 U.S. at 126–27, 112 S.Ct. 1061 (declining to characterize work-related hazards that resulted in death of decedent as violation of decedent's civil rights). The Court in *Collins,* after reviewing the allegations contained in the petitioner's complaint alleging a violation of the decedent's Due Process rights, observed:

> Fairly analyzed, [the petitioner's] claim advances two theories: that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace, or that the city's "deliberate indifference" to Collins' safety was arbitrary government action that must "shock the conscience" of federal judges.

*Id.* at 126, 112 S.Ct. 1061.

{30} The *Collins* Court, however, dispensed with the petitioner's contention that the case came within the scope of the creation of danger exception, noting that "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* The Court also observed that the Due Process Clause does not constitute " 'a guarantee against incorrect or ill-advised personnel decisions.' " *Id.*

at 129, 112 S.Ct. 1061 (quoting *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

{31} The United States Supreme Court further explored the parameters of the "creation of danger" exception in *DeShaney,* 489 U.S. at 193–94, 109 S.Ct. 998. In *DeShaney,* a four-year-old child was severely beaten by his father, causing permanent brain damage. The child and his mother brought suit under 42 U.S.C. § 1983 against the county, its department of social services, and certain individual social services employees. *See id.* The plaintiffs alleged that the defendants violated the child's constitutional rights by failing to intervene when they knew or should have known that the child was a victim of child abuse. The trial court dismissed the claim, holding that the defendants' failure to render protective services to the child did not violate the child's due process rights under the United States Constitution. *See id.* ·

{32} The Supreme Court in *DeShaney* affirmed the order of dismissal and observed that the harm suffered by the child occurred while he was in the custody of his father. The Court further concluded that the defendants did not create the dangers that the child faced and did not do anything to render the child more vulnerable to such dangers. The Court held that except in certain limited situations, such as where an individual is under the direct care or custody of the defendants or the defendants have created the danger visited upon the plaintiff, state actors are not liable under 42 U.S.C. § 1983 for the violent acts of third persons. *See DeShaney,* 489 U.S. at 196–97, 109 S.Ct. 998.

{33} The facts alleged by Plaintiffs show that the injuries suffered by Stella Flores were caused by the acts of a third party, and not the acts of Danfelser or Corriveau. Measured by the criteria articulated by the United States Supreme Court in *Collins* and *De-Shaney,* we conclude that the district court correctly determined that Defendants' conduct, as characterized in Plaintiffs' complaint,

did not infringe upon Plaintiffs' constitutional rights. As discussed above, the matters alleged by Plaintiffs do *not fall within either* the special relationship exception or the state-created danger exception. *See Collins,* 503 U.S. at 128, 112 S.Ct. 1061 (Due Process Clause held not to guarantee city employees a workplace free of unreasonable risks of harm; only the most egregious official conduct or actions which shock the conscience can be said to be "arbitrary ... in a constitutional sense."); *DeShaney,* 489 U.S. at 199, 200 n. 8, 109 S.Ct. 998; *Liebson,* 73 F.3d at 276–77 (removal of guard from prison library, leaving librarian unprotected and subject to sexual assault did not fall within ambit of "created danger" exception so as to render defendants liable to claim under 42 U.S.C. § 1983).

{34} Plaintiffs concede that HSD and the individual Defendants in their official capacities are not "persons" within the contemplation of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64–66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (neither the state nor its officials acting in an official capacity are deemed "persons" within the scope of 42 U.S.C. § 1983); *Daddow v. Carlsbad Mun. Sch. Dist.,* 120 N.M. 97, 101–02, 898 P.2d 1235, 1239–40 (1995).

{35} Finally, Plaintiffs argue that the district court's dismissal of their complaint with prejudice was improper because the order did not specify the reasons for dismissal, did not permit the complaint to be amended, and did not permit an opportunity for discovery. We find these arguments without merit. A district court is not required to state reasons for granting a motion to dismiss under Rule 1–012(B)(6). Additionally, Plaintiffs failed to specify in the proceedings below and before this Court how the filing of an amended complaint would materially differ from the prior complaint. *Cf. Cinel v. Connick,* 15 F.3d 1338, 1346 (5th Cir.1994) (dismissal without leave to amend upheld where plaintiff did not request such relief and failed to point out how complaint would be amended to avoid dismissal).

{36} Plaintiffs have failed to show an error in the order dismissing their tort or civil rights claims under 42 U.S.C. § 1983.

*CONCLUSION*

{37} The district court's order dismissing Plaintiffs' claims against Defendants is affirmed.

{38} IT IS SO ORDERED.

WECHSLER and ARMIJO, JJ., concur.