# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:   **JANUARY 28, 2015**

**NO. 32,847**

**MARSHALL RICHEY,**

     Plaintiff-Appellant,

v.

**HAMMOND CONSERVANCY DISTRICT,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Alexander A. Wold, P.C.
Alexander A. Wold, Jr.
Albuquerque, NM

for Appellant

Miller Stratvert, P.A.
Timothy R. Briggs
Luke A. Salganek
Albuquerque, NM

for Appellee

**OPINION**

**ZAMORA, Judge.**

{1}     The Opinion filed on October 15, 2014 is withdrawn, and the following Opinion is substituted in its place.

{2}     Plaintiff, Marshall Richey, appeals from the district court's grant of Defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 1-012(B)(6) NMRA.  Plaintiff contends that the district court erred in concluding that the facts alleged in his amended complaint failed to state a claim within the exclusivity exception to the New Mexico Workers' Compensation Act (the Act), as recognized in *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148.  We hold that the allegations in the amended complaint are sufficient to satisfy Rule 1-012(B)(6).  We therefore reverse and remand for further proceedings.

**BACKGROUND**

{3}     Plaintiff was injured while working for Hammond Conservancy District (Defendant), and filed a personal injury claim pursuant to *Delgado*.  Plaintiff pleaded the following facts in his amended complaint.  In 2010, Plaintiff worked for Employee Connections, Inc., as a temporary worker. On October 18, 2010, Employee Connections "loaned" Plaintiff to Hammond Conservancy District (Defendant) as a

temporary worker. At Defendant's direction, Plaintiff used a small-diameter, short-nozzle, high-pressure water hose to clean culverts used for flood control. Prior to that date, several workers, including Plaintiff, had advised Defendant that the hose was very difficult to control and had reported "near misses of serious injury and death." The workers, including Plaintiff, warned Defendant that injury from using the hose to clean out culverts was "certain to result." In spite of the workers' protests and over Plaintiff's objections, Defendant directed Plaintiff to use the hose to clean the culvert. The hose "failed to prevent the loss of control" and, as a result, water from the high-pressure hose was "injected directly into . . . Plaintiff," causing severe injuries.

{4} Plaintiff alleged that Defendant knew the assigned task was virtually certain to cause injury or death and that compelling him to perform the task in spite of the numerous employee complaints and objections was egregious. Plaintiff also alleged that Defendant's egregious conduct was the direct, natural, and proximate cause of his injuries.

{5} Defendant moved to dismiss pursuant to Rule 1-012(B)(6), arguing that Plaintiff's claims were barred by the exclusivity provisions of the Act and claiming governmental immunity under the Tort Claims Act, NMSA 1978, §§ 41-1-1 to -30 (1976, as amended through 2013). Plaintiff moved to stay Defendant's Rule 1-012(B)(6) motion pending discovery. The district court held a hearing on Plaintiff's

2

motion to stay, and Plaintiff was permitted to amend his complaint. The parties completed briefing on Defendant's motion to dismiss. After conducting a hearing on the motion, the district court dismissed Plaintiff's claims with prejudice pursuant to Rule 1-012(B)(6). This appeal followed.

**DISCUSSION**

{6} The fundamental question presented in this appeal is whether Plaintiff's amended complaint included facts sufficient to state a claim under *Delgado*. To resolve this question, it is necessary to first examine the evolution of New Mexico's intentional conduct exception to Worker's Compensation exclusivity.

**The Intentional Conduct Exception to Worker's Compensation Exclusivity**

{7} The purpose of the Act's exclusivity provision is to achieve balance between injured workers' need for compensation and employers' need to limit liability for work-related injuries. *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 24, 127 N.M. 47, 976 P.2d 999. However, the Act's exclusivity does not preclude claims against employers that intentionally inflict injury upon workers. *Id.*

{8} Prior to our Supreme Court's decision in *Delgado* in 2001, worker injuries were only compensable outside the Act if the injured worker could demonstrate the employer's actual intent to injure the worker. *See Coleman v. Eddy Potash, Inc.*, 1995-NMSC-063, ¶ 26, 120 N.M. 645, 905 P.2d 185, *overruled by Delgado*, 2001-

NMSC-034, ¶ 23 n.3; *see also Flores v. Danfelser*, 1999-NMCA-091, ¶ 17, 127 N.M. 571, 985 P.2d 173, *overruled by Delgado*, 2001-NMSC-034, ¶ 23 n.3; *Johnson Controls World Servs., Inc. v. Barnes*, 1993-NMCA-004, ¶ 12, 115 N.M. 116, 847 P.2d 761, *overruled by Delgado*, 2001-NMSC-034, ¶ 23 n.3; *Maestas v. El Paso Natural Gas Co.*, 1990-NMCA-092, ¶ 9, 110 N.M. 609, 798 P.2d 210, *overruled by Delgado*, 2001-NMSC-034, ¶ 23 n.3; *Gallegos v. Chastain*, 1981-NMCA-014, ¶ 5, 95 N.M. 551, 624 P.2d 60, *overruled by Delgado*, 2001-NMSC-034, ¶ 23 n.3; *Sanford v. Presto Mfg. Co.*, 1979-NMCA-059, ¶ 14, 92 N.M. 746, 594 P.2d 1202, *overruled by Delgado*, 2001-NMSC-034, ¶ 23 n.3. Our courts adopted this actual intent test from Professor Larson's treatise, 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 103.03 (2000). *Delgado*, 2001-NMSC-034, ¶ 16.

### *Delgado*

{9}     In 2001, our Supreme Court decided *Delgado,* which changed the law by broadening the exclusivity exception. *Padilla v. Wall Colmonoy Corp.*, 2006-NMCA-137, ¶ 9, 140 N.M. 630, 145 P.3d 110. In *Delgado*, the worker was ordered by his supervisor to remove a fifteen-foot iron cauldron brimming over with molten slag, without shutting down a furnace or otherwise correcting an especially dangerous emergency "runaway" condition that caused additional slag to continue flowing.

4

2001-NMSC-034, ¶ 4. Although the worker protested the orders, and informed the supervisor that he was not qualified or competent to perform the removal because he had never operated a kress-haul (a special truck for removing the cauldron) alone under such conditions, the supervisor insisted he proceed. *Id.* ¶ 5. The worker "emerged from the smoke-filled tunnel, fully engulfed in flames," suffering third-degree burns over his entire body. *Id.* He later died of his injuries. *Id.*

{10}     The Court examined the actual intent test, and rejected it as unbalanced in favor of employers. *See id.* ¶ 23 ("Under the actual intent test, a single standard of culpability, namely willfulness, will prevent a worker from benefitting from the Act while preserving the corresponding benefits for the employer. This bias violates the explicit mandate of Section 52-5-1, which demands the equal treatment of workers and employers.") In order to address the egregious conduct of the employer in that case, and to restore balance and equality to the Act, the Supreme Court set forth a new test for determining when conduct falls outside the scope of the Act:

> [W]illlfulness renders a worker's injury non-accidental, and therefore outside the scope of the Act, when: (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

*Delgado*, 2001-NMSC-034, ¶¶ 23, 24, 26.

{11} The first element of the *Delgado* test looks at "whether a reasonable person would expect the injury suffered by the worker to flow from the intentional act or omission." *Id.* ¶ 27. The second element "requires an examination of the subjective state of mind of the worker or employer." *Id.* ¶ 28. This element is satisfied when the worker or employer either failed to consider the consequences of the intentional act or omission, or considered the consequences and expected the injury to occur. *Id.* This element is not satisfied where "the worker or employer considered the consequences and negligently failed to expect the worker's injury to be among them." *Id.* Finally, the third element requires proximate cause. *Id.* ¶ 29.

**Morales**

{12} In *Morales v. Reynolds*, 2004-NMCA-098, 136 N.M. 280, 97 P.3d 612, this Court consolidated and decided the first two cases involving *Delgado* claims reaching us after the *Delgado* decision. *Morales*, 2004-NMCA-093, ¶¶ 1,10. The *Morales* case was an appeal from a district court's grant of summary judgment in favor of the employer. *Id.* ¶ 3. The *Fernandez* case appealed a district court's dismissal for failure to state a claim. *Id.* ¶ 5.

{13} Our focus in *Morales* was on "the procedural and evidentiary requirements a plaintiff must meet in order to overcome a motion to dismiss or for summary judgment." *Dominguez v. Perovich Props., Inc.*, 2005-NMCA-050, ¶ 16, 137 N.M.

6

401, 111 P.3d 721. To determine whether the workers' claims met the *Delgado* requirements as a matter of law, we considered the type of employer conduct *Delgado* sought to deter. *Morales*, 2004-NMCA-098, ¶ 10.

{14} Because the *Delgado* Court did not elaborate on the type of employer conduct that would render a worker's injury compensable under the new test, we looked to the facts of that case for guidance. *Morales*, 2004-NMCA-098, ¶ 9. We determined that the *Delgado* decision stemmed from "a combination of deadly conditions, profit-motivated disregard for easily implemented safety measures, complete lack of worker training or preparation, and outright denial of assistance to a worker in a terrifying situation." *Morales*, 2004-NMCA-098, ¶ 10.

{15} We concluded *Delgado* plaintiffs "must plead or present evidence that the employer met each of the three *Delgado* elements through actions that exemplify a comparable degree of egregiousness as the employer in *Delgado* in order to survive a pre-trial dispositive motion." *Morales*, 2004-NMCA-098, ¶ 14. We compared this threshold determination of egregiousness to the requirement in intentional infliction of emotional distress (IIED) cases, where "we require the court to determine as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery[.]" *Id.* ¶ 15 (internal quotation marks and citation omitted).

{16} The purpose for a threshold determination of egregiousness in *Delgado* cases was to "preserve the bargain of the Act in a meaningful way." *Morales*, 2004-NMCA-098, ¶ 16. Our concern was that "[e]xposing employers to the costs of litigating a full trial on the merits of every case in which a worker alleges some wilful conduct or claims that safety was ignored due to profit motive would deprive employers of their benefit from the Act's bargain." *Id.* Even unsuccessful claims, we reasoned, "would be a significant drain on an employer's financial resources if all questions of employer intent, no matter how slight, were sent to a jury." *Id.*

{17} Holding that both the *Morales* and the *Fernandez* plaintiffs failed to satisfy the threshold determination of egregious employer conduct, as well as the requirements of *Delgado*, we affirmed the district courts' decisions in both cases. *Morales*, 2004-NMCA-098, ¶ 1.

### *Salazar I* and *Salazar II*

{18} In 2005, this Court addressed the question of whether the receipt of Worker's Compensation benefits precludes an injured worker from filing a *Delgado* claim. *Salazar v. Torres*, 2005-NMCA-127, ¶ 1, 138 N.M. 510, 122 P.3d 1279 (*Salazar I*), *rev'd in part*, 2007-NMSC-019, 141 N.M. 559, 158 P.3d 449 (*Salazar II*). In *Salazar I*, the employer instructed the worker to start a truck by pouring gasoline into the truck's carburetor. 2005-NMCA-127, ¶ 2. While the worker was still pouring the

gasoline, the employer instructed the worker's son to start the truck's ignition. *Id.* The engine ignited the gasoline and the worker was severely burned. *Id.*

{19}    The worker received Worker's Compensation benefits, and entered into a settlement which included a lump-sum payment for permanent partial disability as well as future medical benefits. *Id.* ¶¶ 3, 31 (Pickard, J., specially concurring in part and dissenting in part). The worker subsequently filed a claim for damages, pursuant to *Delgado*. *Salazar I*, 2005-NMCA-127, ¶ 3. The employer moved for summary judgment and the worker responded. *Id.* Then, "for the first time in its reply to the response, [the employer] contended that [the w]orker's version of the facts, even if true, would not rise to the level of egregiousness sufficient to support a *Delgado* claim." *Salazar I*, 2005-NMCA-127, ¶ 3. Summary judgment was granted without an explanation of the district court's reasoning. *Id.*

{20}    A divided panel reversed the district court's grant of summary judgment. *Id.* ¶¶ 1, 30. The majority noted that in many cases, injured workers, faced with medical bills and an inability to work, will not be "in a financial position to wait out a lengthy, expensive and risky court proceeding to be compensated for the injury, due to the problems of pressing medical bills, and often the inability to work." *Id.* ¶ 11 (internal quotation marks and citation omitted). As a result, the majority concluded that "to consider the receipt of benefits a forfeiture of [a worker's] right to pursue the

9

employer in the courts would not only be harsh and unjust, it would also frustrate the laudable purposes of the Act." *Id.* (alteration, internal quotation marks, and citation omitted).

{21} Addressing the employer's argument that the worker's allegations, even if true, would not satisfy the required elements of a *Delgado* claim, the majority held that:

> Worker's complaint tracks the language of *Delgado* verbatim in so far as alleging the mental state on [the *e*]*mployer's* part, and [the e]mployer never submitted an affidavit in contesting these allegations. Our law simply requires *notice pleading*, and without any motion for summary judgment supported by [the e]mployer's own affidavit regarding willfulness, we hold that [the w]orker's allegations tracking the language of *Delgado* were sufficient to withstand what was tantamount to a motion to dismiss for failure to state a claim.

*Salazar I*, 2005-NMCA-127, ¶ 27 (emphasis added) (citation omitted).

{22} A special concurrence and dissent took issue with the majority's holdings related to both the pleading standard and receipt of benefits for *Delgado* claims. *Salazar I*, 2005-NMCA-127, ¶¶ 36, 37 (Pickard, J., specially concurring in part and dissenting in part). As to the issue of benefits, the dissent expressed concern that by allowing employees to sue in tort after accepting compensation, the majority was disrupting the Act's balance of interests. *See id.* ¶ 34 (Pickard, J., dissenting) ("[T]he Act represents a bargain between employers and workers pursuant to which each gives up rights and obligations in return for some other benefit. The Act balances a worker's need for expeditious payment of benefits and an employer's need to limit

liability. In [the dissenting Judge's] view, the majority tips this balance entirely to the side of the worker[.]" (citation omitted)).

{23} The special concurrence advocated for a more stringent pleading standard in cases involving *Delgado* claims, stating:

> Our most recent cases of *Dominguez* and *Morales* have required a level of egregiousness of employer behavior comparable to that found in *Delgado*.
>
> . . . .
>
> So as not to require employers to litigate in circumstances where a worker cannot establish the requisite *Delgado* willfulness at the time of the filing of the complaint, I would adopt a pleading requirement in *Delgado* cases that requires workers to plead sufficient facts demonstrating that the standard is met or be subject to dismissal for failure to state a claim upon which relief can be granted.

*Salazar I*, 2005-NMCA-127, ¶ 38 (Pickard, J., specially concurring).

{24} Our Supreme Court granted certiorari to resolve the question of "whether and when a worker can receive benefits under the Act without compromising a potential intentional tort action under *Delgado*." *Salazar II*, 2007-NMSC-019, ¶ 4. "Based on the clear intent of the Act," the Court held that when a worker suffers a work-related injury, and "questions whether the injury was intentionally inflicted by the employer," the worker may collect benefits under the Act, "while pursuing an intentional tort action under *Delgado*." *Salazar II*, 2007-NMSC-019, ¶ 1. However, the Court also concluded that when a worker enters into a final settlement of the claim in exchange

for a lump-sum payment of indemnity benefits, the worker is then precluded from pursuing a *Delgado* claim. *Salazar II*, 2007-NMSC-019, ¶ 1. Because the worker in that case had received a lump-sum payment, representing full settlement of his claim, the Court reversed *Salazar I*. *Salazar II*, 2007-NMSC-019, ¶ 1. Notably, *Salazar II* did not reverse the majority's holding in *Salazar I* as to the pleading standard for *Delgado* claims. *Salazar II*, 2007-NMSC-019, ¶¶ 4, 30.

**The Present Case**

**Standard of Review**

{25}    We review motions to dismiss a complaint for failure to state a claim under Rule 1-012(B)(6) de novo. *Healthsource, Inc. v. X-Ray Assocs. of N.M.*, 2005-NMCA-097, ¶ 16, 138 N.M. 70, 116 P.3d 861. In considering a motion to dismiss, we test "the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted). Accepting all well-pleaded factual allegations in the complaint as true, we "resolve all doubts in favor of sufficiency of the complaint." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (internal quotation marks and citation omitted). Dismissal under Rule 1-012(B)(6) is appropriate only where the non-moving party is "not entitled to recover under any

theory of the facts alleged in their complaint." *Delfino*, 2011-NMSC-015, ¶ 12 (internal quotation marks and citation omitted).

{26} Defendant argues that Plaintiff's amended complaint is legally insufficient to state a *Delgado* claim because Plaintiff failed to allege Defendant's subjective intent, and because Plaintiff's allegations do not satisfy the threshold determination of egregiousness required for *Delgado* claims. Defendant also argues that an employer's failure to take safety measures does not meet the *Delgado* standard.

{27} Defendant correctly states that the absence of safety measures generally will not give rise to a *Delgado* claim. *See May v. DCP Midstream*, *L.P.*, 2010-NMCA-087, ¶ 13, 148 N.M. 595, 241 P.3d 193 ("The absence of safety measures by itself demonstrates neither intent nor an inherent probability of injury, and we believe the Supreme Court in *Delgado* intended more than the disregard of preventative safety devices when contemplating an exception to the Workers' Compensation Act."); *see also Dominguez*, 2005-NMCA-050, ¶ 22 (holding that an employer's appalling disregard for safety requirements designed to help prevent injury and death on the job does not equate to an employer "specifically and wilfully caus[ing] the [worker] to enter harm's way, facing virtually certain serious injury or death, as contemplated under *Delgado*"). However, we are not convinced that Plaintiff is alleging a general failure by Defendant to provide safe equipment or take safety precautions.

{28} Plaintiff's allegations are that Defendant was notified that the specific equipment Plaintiff was required to use was dangerous and had nearly caused serious injuries to several employees; that Defendant required Plaintiff to use the equipment in spite of this knowledge and over his objections; and that as a result, Plaintiff was severely injured using the equipment. Under *Morales*, the "critical measure" for *Delgado* claims is "whether the employer has, in a specific dangerous circumstance, required the [worker] to perform a task where the employer is or should clearly be aware that there is a substantial likelihood the [worker] will suffer injury or death by performing the task." *Dominguez*, 2005-NMCA-050, ¶ 22; *see May*, 2010-NMCA-087, ¶ 13.

{29} Taking the allegations in Plaintiff's amended complaint as true, and construing them in a light most favorable to the complaint's sufficiency, we conclude that Plaintiff's allegations were sufficient to state a claim under *Delgado. See Salazar I*, 2005-NMCA-127, ¶ 27 (holding that "[the w]orker's allegations tracking the language of *Delgado* were sufficient to withstand what was tantamount to a motion to dismiss for failure to state a claim").

{30} To the extent that Defendant argues that under *Morales* the Rule 12(B)(6) analysis for *Delgado* claims is different than the analysis typically applied to Rule (12)(B)(6) motions, we are not persuaded. As *Salazar I* recognized, New Mexico is

14

a notice pleading state. *Madrid v. Vill. of Chama*, 2012-NMCA-071, ¶ 17, 283 P.3d 871. We do not require "[district] courts to consider the merits of a plaintiff's allegations when deciding a motion to dismiss[.]" *Id.* Rather, we require "only that the plaintiff allege facts sufficient to put the defendant on notice of his claims." *Id.*; *see Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶¶ 1, 10, 335 P.3d 243 (reaffirming "New Mexico's longstanding commitment to the nontechnical fair notice requirements"); *see also* Rule 1-008(A)(2) (stating that a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

{31} In *Salazar I*, 2005-NMCA-127, ¶ 27, we held that the notice pleading standard is applicable in cases involving *Delgado* claims, and our holding as to that issue was not reversed by *Salazar II*, 2007-NMSC-019, ¶ 4. We also note that the special concurrence in *Salazar I* proposed adopting a heightened pleading standard for *Delgado* claims, indicating that *Morales* had not already done so. *Salazar I*, 2005-NMCA-127, ¶ 38.[1] Moreover, applying the notice pleading standard to *Delgado* claims is consistent with the policy and philosophy of the Act as discussed in *Salazar II*:

---

[1]Judge Pickard authored *Morales* and also wrote the dissenting opinion in *Salazar I*.

*Delgado* established a high threshold of culpability that should eliminate many claims before trial. In light of this high threshold, injured workers must be afforded a reasonable time to investigate, including pre-trial discovery, whether they have a sustainable *Delgado* claim. It may not be until the summary judgment stage, or even trial, that a worker has the answer.

*Salazar II*, 2007-NMSC-019, ¶ 14 (citations omitted).

{32} *Salazar II* also addressed the concern expressed in *Salazar I's* dissent, that employers may be required to litigate in circumstances where the requisite *Delgado* willfulness is not established in the complaint:

We acknowledge that under our holding here, employers who pay compensation benefits may, in some cases, also have to pay legal fees to defend an intentional tort action under *Delgado*. Even if the worker's *Delgado* claim is ultimately dismissed, the employer will never recover the cost of those legal fees. However, the Act does not insulate employers from such contingencies. As noted above, the [L]egislature intended to protect employers from negligence actions for accidental injury, not actions for intentional tort. Accordingly, an employer is protected from having to defend negligence lawsuits, but not against the expense of lawsuits grounded in intentional or willful behavior. We observe that in some instances, perhaps most, prudent employers have the ability to anticipate and plan for the possibility of paying future attorney fees to defend against *Delgado* claims. [The w]orkers, on the other hand, can rarely plan for injuries inflicted by the willful misconduct of their employers.

*Salazar II*, 2007-NMSC-019, ¶ 22 (citation omitted).

**Defendant's Governmental Immunity Defense**

{33} In its motion to dismiss, Defendant claims that because it is a statutorily created conservancy district, it is an arm of the State and enjoys immunity under the Tort

16

Claims Act. Plaintiff argues that immunity was waived pursuant to NMSA 1978, § 41-4-6 (2007). The district court found that Defendant's Rule 1-012(B)(6) motion to dismiss was well taken, and ordered that Plaintiff's complaint be dismissed with prejudice pursuant to Rule 1-012(B)(6). Because the district court did not reach the issue of governmental immunity, we leave it for determination on remand.

**CONCLUSION**

{34}    For the foregoing reasons, we reverse and remand for further proceedings.

{35}    **IT IS SO ORDERED.**


_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**RODERICK T. KENNEDY, Judge**

17