**Certiorari Granted, September 27, 2010, No. 32,557**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2010-NMCA-087**

**Filing Date: July 30, 2010**

**Docket Nos. 29,331 & 29,490**
**(consolidated)**

**KRISTOPHER MAY,**

  **Plaintiff-Appellant,**

**v.**

**DCP MIDSTREAM, L.P. f/k/a**
**DUKE ENERGY FIELD SERVICES, L.P.,**
**and DUKE ENERGY FIELD SERVICES, INC.,**

  **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Caren I. Friedman
Santa Fe, NM

Killion Law Firm
Samantha Peabody Estrello
Lubbock, TX

for Appellant

Hinkle, Hensley, Shanor & Martin, L.L.P.
Richard E. Olson
Lucas M. Williams
Roswell, NM

for Appellees

**OPINION**

1

**VIGIL, Judge.**

**{1}**      Plaintiff appeals from two orders of the district court. First, the district court granted Defendants' motion for summary judgment, concluding that Plaintiff's evidence failed to satisfy the requirements of a *Delgado* claim. *See Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 24, 131 N.M. 272, 34 P.3d 1148 ("We hold that when an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be exclusively compensable under the [Workers' Compensation] Act, that employer may not enjoy the benefits of exclusivity, and the injured worker may sue in tort."). The district court then awarded Defendants, as prevailing parties, deposition costs in the amount of $2,800.36. Rule 1-054(D)(2)(e) NMRA. We affirm.

**BACKGROUND**

**{2}**      Defendants operate the Duke Energy/DCP Linam Ranch Facility where Plaintiff was employed. One of the functions of the facility is to receive gas pipe inspection gauges (pigs) that are sent through the pipeline to clean out deposits of paraffin, sulfates, and other buildup. These pigs are typically three feet in length, twelve inches in diameter, and weigh approximately forty-five pounds. The Eddy County pipeline pig receiver at the Linam Ranch Facility was modified to accept a "smart" pig, a much longer pig which also detects pipe weaknesses, pipe thickness, and leaks. Smart pigs measure about ten feet in length and weigh approximately 800 pounds. The modifications to the receiver included the addition of a twelve-foot section of pipe (pup) to accommodate the longer pig and a four-foot barrel extension. The barrel extension was an added safety precaution in the event that the pig entered the receiver at high velocity. Smart-pigging operations ceased, and the four-foot barrel extension was removed, but the receiver otherwise was left in its modified configuration and not returned to the original configuration design to safely receive regular pigs.

**{3}**      Plaintiff was employed as a plant operator at the Linam Ranch Facility. Plaintiff was tasked to retrieve the pig from the Eddy County receiver. Due to the modified configuration of the receiver, Plaintiff was unable to determine that the pig was lodged in the twelve-foot pup, unable to determine that there was 250 pounds of pressure behind the pig, and unable to relieve any pressure from the pup. To determine the location of the pig, Plaintiff had to place himself in front of the receiver opening. Plaintiff was standing adjacent to the open door of the receiver when the pig suddenly became dislodged and struck him at approximately ninety miles per hour. Plaintiff was struck in the forearm, head, and jaw, resulting in significant injuries including a crushed hand, fractured wrist, fractured and dislocated elbow, fractured ulna, two transverse fractures of the neck, broken skull bone, and numerous lacerations to the face and body. A two-inch piece of his ulna was also found lodged in the pig that came to rest almost 300 feet from the receiver opening.

**{4}**      Plaintiff brought suit alleging that Defendants' conduct was willful under the standards set out in *Delgado* and therefore his case fell outside of the exclusivity provision

2

in the Workers' Compensation Act. NMSA 1978, § 52-1-9 (1973). Defendants moved for summary judgment arguing that Plaintiff failed to produce evidence sufficient to support a *Delgado* claim. The district court granted the motion, concluding that, although negligent, Defendants' conduct simply did not rise to the egregious level of conduct exhibited by the employer in *Delgado*. Pursuant to Rule 1-054(D)(2)(e), Defendants submitted a bill of costs for deposition testimony and were awarded $2,800.36. Plaintiff appeals.

**DISCUSSION**

**{5}** We review a district court order granting summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* When the movant makes a prima facie showing that summary judgment is appropriate, "the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts that require a trial on the merits." *Morales v. Reynolds*, 2004-NMCA-098, ¶ 19, 136 N.M. 280, 97 P.3d 612. This Court must view all evidence in the light most favorable to the party opposing the motion. *Id.* ¶ 22.

*Delgado* **Claim**

**{6}** Our Supreme Court in *Delgado* held that the exclusivity provision of the Workers' Compensation Act does not apply when the following requirements are satisfied:

> [W]illfulness renders a worker's injury non-accidental, and therefore outside the scope of the Act, when: (1) the worker or employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the worker or employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

2001-NMSC-034, ¶ 26.

**{7}** In other words, for a claim to be outside of the scope of the Act a plaintiff must show "some evidence of the objective expectation of injury, the subjective state of mind of the employer, and the causal relationship between the intent and the injury." *Morales*, 2004-NMCA-098, ¶ 17. To survive a pre-trial motion for summary judgment on a *Delgado* claim, Plaintiff "must plead or present evidence that the employer met each of the three *Delgado* elements through actions that exemplify a comparable degree of egregiousness as the employer in *Delgado*." *Morales*, 2004-NMCA-098, ¶ 14. If a plaintiff cannot demonstrate conduct that approximates the egregious conduct exhibited by the employer in *Delgado* under the three-prong test, then summary judgment is appropriate. *Morales*, 2004-NMCA-098, ¶ 17.

3

**{8}** In *Morales*, we identified the type of situation that *Delgado* addresses: "a combination of deadly conditions, profit-motivated disregard for easily implemented safety measures, complete lack of worker training or preparation, and outright denial of assistance to a worker in a terrifying situation." *Morales*, 2004-NMCA-098, ¶ 10. The "critical measure" is whether the employer forced the employee to perform a task in a specific dangerous circumstance in which the employer should have been clearly aware of a substantial likelihood of injury or death. *Dominguez v. Perovich Props., Inc.*, 2005-NMCA-050, ¶ 22, 137 N.M. 401, 111 P.3d 721.

**{9}** The complaint alleges that, at all times between the cessation of smart pig operations on the Eddy County receiver and Plaintiff's injuries, Defendants knew that the receiver was "dangerously ill-suited for using and extracting the normal pig from the pipeline." The complaint further asserts that the failure to reconfigure the Eddy County receiver to receive normal pigs, and the failure to properly train Plaintiff in pig retrieval on the modified receiver, constitutes an intentional act or omission, without just cause or excuse, that was reasonably expected to result in the injury he suffered. Finally, the complaint alleges that the intentional act or omission on the part of Defendants proximately caused Plaintiff's injuries.

**{10}** The summary judgment record shows the following. An internal investigative report conducted by Defendants (TapRoot Report) after the incident indicates that operations personnel working on the Eddy County receiver were unable to determine with certainty the location of the pig in the receiver, unable to determine if any pressure was trapped behind the pig, and unable to relieve any pressure that may have become trapped. It also states that the "possibility of trapped pressure is never precluded." The report goes on to state, "operations personnel lacked a fundamental understanding of the mechanics and hazards associated with operating a pig receiver." The on-the-job training received by Plaintiff and other plant operators only concerned the original receiver, not the reconfigured receiver. Plaintiff asserts these facts could lead a reasonable person to believe that the failure to provide a way to detect trapped pressure in the line, the failure to provide a way to relieve pressure in the receiver, and the failure to properly train operating personnel to understand the fundamentals of the reconfigured receiver would lead to exactly the kind of calamity that befell Plaintiff.

**{11}** To demonstrate Defendants' subjective expectation of the injury, Plaintiff produced a note that was written when the receiver was being modified. A concern was expressed that the pig could get stalled in the receiver with pressure packed behind it. The note recommends mitigating the risk by adding a four-foot barrel extension to the receiver as well as positioning a person at a valve upstream of the receiver to relieve pressure if necessary. Once the smart pig operations ceased, Defendants removed the barrel extension and did not position a person upstream of the receiver during regular pig retrieval. Plaintiff also offered evidence that a supervisor received offers from several employees to change the receiver back to its original configuration, but he declined, stating that he would get to it eventually.

4

**{12}** We conclude Plaintiff's evidence does not create material issues of fact for a jury to decide whether Defendants' actions and omissions exemplify a comparable degree of egregiousness as the employer in *Delgado*. In *Delgado* the employee was ordered to attempt to remove a giant cauldron of molten slag in a situation for which he had not been trained using unfamiliar equipment underneath a thirty-ton, overflowing cauldron. 2001-NMSC-034, ¶¶ 4-5. In this case, Plaintiff was performing a routine task, albeit on unsafe equipment, that he had performed at least ten times before. Moreover, while the employer in *Delgado* exhibited what this Court in *Morales* called "profit-motivated disregard for easily implemented safety measures," 2004-NMCA-098, ¶ 10, there is no proof in this case that Defendants' decision to keep the receiver in its modified state was profit-motivated in disregard for safety.

**{13}** Without question, Plaintiff's job would have been safer if the receiver had been reconfigured to receive normal pigs, or if it had been fitted with a vent to release excess pressure should the pig become lodged in the twelve-foot section of pipe originally intended for the smart pig. In *Dominguez* we said, "The difficult analytic issue is whether an employer's egregious and knowing general disregard for safety measures can come within *Delgado* and thereby remove the employer's protection from a tort claim." *Dominguez*, 2005-NMCA-050, ¶ 7. We conclude that having an employee perform a routine, familiar task which he had performed before is not the same as sending an employee to face certain injury. The absence of safety measures by itself demonstrates neither intent nor an inherent probability of injury, and we believe the Supreme Court in *Delgado* intended more than the disregard of preventative safety devices when contemplating an exception to the Workers' Compensation Act. *See Dominguez*, 2005-NMCA-050, ¶¶ 21-22. An employer's disregard for safety requirements designed to help prevent injury and death on the job does not mean that an employer "specifically and wilfully caused the employee to enter harm's way, facing virtually certain serious injury or death, as contemplated under *Delgado*." *Dominguez*, 2005-NMCA-050, ¶ 22. To reach the *Delgado* exception, it is critical that the employer has, "*in a specific dangerous circumstance*" required the employee to perform a task where the employer is or should clearly be aware that there is a substantial likelihood the employee will suffer injury or death by performing the task." *Dominguez*, 2005-NMCA-050, ¶ 22 (emphasis added). We conclude that the foregoing language is directly applicable to the facts of the case now before us.

**{14}** The facts of *Delgado* are manifestly more egregious than those in the present case. When confronted with a new and frightening situation that he was completely unprepared for, the worker radioed his superiors and repeatedly insisted that he did not want to perform the task and he was not trained to handle the situation. 2001-NMSC-034, ¶ 34. Plaintiff in this case was performing an operation he had performed successfully several times before. The employer in *Delgado* knew that it was sending an employee into almost certain injury or death, and utterly disregarded the consequences in favor of the profit bottom line. Defendants in this case allowed a negligently dangerous condition to persist, but there is no indication that, in leaving the receiver in its reconfigured state, they knew or expected Plaintiff's injuries to occur. While Plaintiff has presented evidence that calls into question

5

whether Defendants knew that the receiver was dangerous, it does not reflect such a severe disregard for human life and limb as presented in *Delgado*. The situation faced by Plaintiff is simply not analogous to the anticipated and sudden calamity that the worker in *Delgado* faced.

**{15}** Under these facts, there is little doubt that Defendants were negligent, perhaps even grossly negligent, as the district court noted. However, negligence is not enough. Defendants did not exhibit conduct of the same level of callousness and egregiousness exhibited by the employer in *Delgado*. Plaintiff's evidence is not sufficient to survive Defendants' motion for summary judgment.

**Award of Costs**

**{16}** The trial court awarded deposition costs in favor of Defendants in the amount of $2,800.36. Rule 1-054(D)(1) states that costs "shall be allowed to the prevailing party unless the court otherwise directs" and Rule 1-054(D)(2)(e)(ii) provides that the cost of a deposition in successful support or defense of a motion for summary judgment is generally recoverable as a cost. The language of the rule creates a presumption for an award of costs in favor of the prevailing party, and the burden is on the losing party to demonstrate circumstances that justify the reduction or denial of costs. *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 103, 134 N.M. 77, 73 P.3d 215. We review a district court assessment of costs under the abuse of discretion standard. *Id.*

**{17}** Plaintiff claims that because he is unable to pay, an award of costs is unjust, and the district court therefore abused its discretion in awarding these costs to Defendants. We agree that a losing party's ability to pay is a proper factor for a district court to consider in determining whether to award costs. *Id.* However, the district court did consider Plaintiff's ability to pay in exercising its discretion. Plaintiff's affidavit detailing his monthly income and costs indicates that he and his fiancé have approximately $7000 in disposable income every year. The district court relied on this information and determined in its discretion that the deposition costs award of $2,800.36 was appropriate. While we might have come to a different conclusion, the district court relied on facts in the record and came to a logical conclusion. We therefore conclude the district court did not abuse its discretion. *See City of Santa Fe v. Komis*, 114 N.M. 659, 663, 845 P.2d 753, 757 (1992) ("The trial court abuses its discretion when . . . [it]'s rulings [are] clearly against the logic and effect of the facts and circumstances before the court.").

**CONCLUSION**

**{18}** The district court order granting Defendants summary judgment and the district court order awarding costs in favor of Defendants are affirmed.

**{19}    IT IS SO ORDERED.**

6

                           _____

                           **MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *May v. DCP Midstream, L.P.*, Docket Nos. 29,331/29,490**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **WC** | **WORKERS' COMPENSATION** |
| WC-CO | Costs |
| WC-ER | Exclusive Remedy |