**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date:  **NOVEMBER 14, 2016**

**NO. 34,254**

**RENEE WALSH as PERSONAL**
**REPRESENTATIVE OF THE ESTATE**
**OF DONA LU SNYDER and**
**RENEE WALSH, INDIVIDUALLY and**
**GEORGE WALSH, INDIVIDUALLY and as**
**HEIRS and DEVISEES, TO THE ESTATE OF**
**DONA LU SNYDER,**

      Plaintiffs-Appellants,

v.

**ALEXANDRO MONTES,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Judge**

Kenneth L. Beal, P.C.
Kenneth L. Beal
Las Cruces, NM

for Appellants

Estrada Law, P.C.
Michele Ungvarsky
Las Cruces, NM

for Appellee

**OPINION**

**ZAMORA, Judge.**

{1}    Alexandro Montes (Defendant), as the named beneficiary of Dona Lu Snyder's savings and investment plan, received the proceeds of that plan after Snyder's death. Snyder's estate and children (collectively Plaintiffs), brought suit, seeking recovery of the proceeds. The parties reached a stipulated agreement. Subsequently, Defendant moved to strike the stipulated agreement and to dismiss Plaintiffs' action under Rule 1-012(B)(6) NMRA for failure to state a claim on which relief could be granted. The district court found that Plaintiffs' claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 to 1461 (1974, as amended through 2012), and granted both motions. We reverse and remand to the district court for enforcement of the stipulated agreement.

**BACKGROUND**

{2}    Snyder was employed by Raytheon Company beginning in 1979. In 1992, Snyder and Defendant were married and Snyder designated Defendant as the beneficiary on the Fidelity Savings and Investment plan (Fidelity plan), offered through Raytheon. In 1997, Snyder and Defendant divorced. Under their marital settlement agreement, Defendant agreed that Snyder would retain ownership of her retirement benefits. The marital settlement agreement was incorporated by reference

into the final divorce decree. However, Snyder never removed or replaced Defendant as the named beneficiary on the Fidelity plan.

{3} Upon Snyder's death in 2013 Defendant received the proceeds of the Fidelity plan. On March 24, 2014, Plaintiffs filed suit in the district court attempting to recover the proceeds. Plaintiffs claimed that they were entitled to the proceeds of the Fidelity plan because (1) Defendant waived his interest in Snyder's retirement benefits in the marital settlement agreement between him and Snyder; (2) under NMSA 1978, Section 45-2-804 (2011), an unaffirmed, pre-divorce beneficiary designation is invalid; and (3) equity justifies the creation of a constructive trust because Defendant was not the intended beneficiary of the Fidelity plan.

{4} On April 21, 2014, the parties filed a stipulated agreement in the district court. Under the agreement, Defendant agreed to transfer the proceeds to Plaintiffs, and Plaintiffs agreed to dismiss their claim. The parties agreed that the proceeds would be transferred to Plaintiffs "collectively or individually as directed by [the district c]ourt." The stipulated agreement was signed by all parties and filed in the district court. Then, in May 2014 Defendant obtained new counsel and moved to strike the stipulated agreement. Defendant also moved to dismiss Plaintiffs' action under Rule 1-012(B)(6) for failure to state a claim on which relief could be granted.

{5}     At a hearing on the motions, Defendant argued that Plaintiffs' action was preempted by ERISA and should be dismissed. Defendant claimed that because he did not know that Plaintiffs' action was preempted when he entered into the stipulated agreement, the agreement should be set aside. The district court agreed with Defendant and granted both of Defendant's motions. This appeal followed.

**DISCUSSION**

**Dismissal Pursuant to Rule 1-012(B)(6)**

{6}     "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted). "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) is reviewed de novo." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (internal quotation marks and citation omitted). On review, "we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Id.* (internal quotation marks and citation omitted). Under Rule 1-012(B)(6), dismissal is appropriate only if the non-moving party is "not entitled to recover under any theory of the facts

alleged in their complaint." *Delfino*, 2011-NMSC-015, ¶ 12 (internal quotation marks and citation omitted).

{7} Here, Plaintiffs advanced three theories under which they were entitled to relief: (1) waiver of Defendant's right to the Fidelity plan proceeds in the divorce decree; (2) revocation of Defendant's beneficiary designation under Section 45-2-804; and (3) creation of a constructive trust, recognizing Plaintiffs as beneficial owners of the proceeds in equity. The district court found that state law concerning the distribution of the proceeds of the Fidelity plan is preempted by ERISA. Specifically, the district court found that "ERISA preempts the state statute" and that imposing a constructive trust would be an "end run on the federal law." Based on these findings, the district court concluded that, as a matter of law, Plaintiffs could not prevail. We disagree.

{8} Under ERISA, every employee benefit plan must be established and maintained pursuant to a written instrument that specifies the basis on which payments are made to and from the plan. 29 U.S.C. § 1102(a)(1), (b)(4). ERISA obligates administrators to pay ERISA plan benefits to the named beneficiary. *See* § 1104(a)(1)(D) (requiring ERISA plan administrators to "discharge [their] duties . . . in accordance with the documents and instruments governing the plan"). Under ERISA, any and all state

4

laws are preempted "insofar as they may now or hereafter relate to any employee benefit plan." § 1144(a), (c)(1).

{9} Here, the district court's determination that Plaintiffs' claims were preempted was based on the United States Supreme Court's decision in *Boggs v. Boggs*, that a state law permitting a testamentary transfer of an interest in the undistributed ERISA plan benefits was preempted. 520 U.S. 833, 851-52 (1997). *Boggs* is distinguishable from the case before us. In *Boggs*, the plan participant designated his first wife as the beneficiary of his ERISA plan. *Id.* at 836. His first wife died, bequeathing her community property interest in the undistributed pension plan funds to the couple's sons. *Id.* at 836-37. The participant remarried before retiring. *Id.* at 836. Upon retirement, he received a lump sum distribution of his pension plan, which he rolled over into an IRA; shares of stock from the company's employee stock ownership plan; and a monthly annuity payment. *Id.* at 836. After his death, the participant's sons contested the right of the second wife to the corpus and interest on the IRA, arguing that the earlier testamentary gift from the first wife vested ownership of a portion of the IRA in the sons. *Id.* at 836-37. The Court held that the state law permitting the testamentary transfer of a nonparticipant spouse's community property interest in *undistributed* pension plan benefits was preempted by ERISA, explaining that operation of the state law would have resulted in the diversion of plan benefits

without the participant's consent. *See id.* at 851-52. Unlike the case before us, *Boggs* did not involve a beneficiary's waiver of benefits and the Court did not address the issue.

{10}    In *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009), the Court considered whether an ERISA plan administrator had a duty, pursuant to ERISA's plan documents rule, to follow the participant's beneficiary designation where the designated beneficiary was the participant's former spouse who signed a waiver of benefits as part of the divorce decree. *See id.* at 300-04. The Court held that ERISA required the plan administrator to distribute the benefits to the named beneficiary in accordance with the plan documents. *Id.* at 304. However, the Court explicitly left open the question of whether, once the benefits are distributed, the participant's estate may enforce the waiver against the beneficiary. *See id.* at 299 n.10 ("[W]e [do not] express any view as to whether the [participant's e]state could have brought an action in state or federal court against [the participant's former spouse] to obtain the benefits after they were distributed."). "[C]ourts interpreting *Kennedy* have observed that the Court may have closed one door to litigation against plan administrators but it may well have opened another to litigation between family or former family members." *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 134 (2012) (internal quotation marks and citation omitted); *see*

6

*Smalley v. Smalley*, 399 S.W.3d 631, 638 (2013) (same); *see also Staelens ex rel. Estate of Staelens v. Staelens*, 677 F. Supp. 2d 499, 507 (D.Mass. 2010) (same).

{11} Defendant relies on *Hillman v. Maretta*, ___U.S. ___, 133 S. Ct. 1943 (2013), for the proposition that neither state law nor waiver can frustrate a federal choice of beneficiary either before or after distribution, suggesting that the Court answered in *Hillman* the question it expressly left open in *Kennedy*. We are not persuaded. In *Hillman*, the Supreme Court considered whether a post-distribution state law claim was preempted by the Federal Employees' Group Life Insurance Act (FEGLIA), 5 U.S.C. § 8701 (2012). Under FEGLIA, federal employees' life insurance benefits are paid according to a specified "order of precedence[,]" accruing first to the designated beneficiary or beneficiaries, and then, if there is no designated beneficiary, to the employee's widow or widower, children, parents, executor, or other next of kin. 5 U.S.C. § 8705(a). The *Hillman* Court determined that the FEGLIA order of precedence preempted a Virginia statute that allowed the plan participant's new spouse to recover insurance policy proceeds from the plan participant's former spouse who was the named beneficiary. *Hillman*, __ U.S. at __,133 S. Ct. at 1948-49, 1953. The Court observed that the state statute "displaces the beneficiary selected by the insured in accordance with FEGLIA and places someone else in her stead[,]" thereby frustrating "the deliberate purpose of Congress to ensure that a federal employee's

named beneficiary receives the proceeds." *Id.* at 1952 (internal quotation marks and citation omitted).

{12}     Because *Hillman* required an analysis of a post-distribution claim under FEGLIA, it is readily distinguishable. FEGLIA includes a statutory order of precedence, intended by Congress to achieve the substantive goal of making sure that employees enjoy complete freedom in designating a beneficiary to whom death benefits would belong. *Hillman*, ___ U.S. at ___, 133 S. Ct. at 1952. "FEGLIA's implementing regulations further underscore that the employee's right of designation cannot be waived or restricted." *Id.* (internal quotation marks and citation omitted); *see* 5 C.F.R. § 843.205(e) (2016). By contrast, ERISA does not include a statutory order of precedence, and its regulations do not expressly prohibit the waiver or restriction of beneficiary designations. *See* 29 U.S.C. § 1104; 29 C.F.R. § 2590.606-1 (2015). This reflects ERISA's distinct purpose, which is to simply ensure that employers and plan administrators act in accordance with the plan's written terms. *See Kennedy*, 555 U.S. at 301 ("The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: simple administration, avoiding double liability, and ensuring that beneficiaries get what's coming quickly, without the folderol

essential under less-certain rules." (alterations, internal quotation marks, and citation omitted)).

{13}     Moreover, *Hillman* like *Boggs* involved the preemption of a state statute but did not address whether a waiver of benefits can be enforced against the beneficiary once the ERISA plan benefits are distributed. Thus, it appears that the question of whether Plaintiffs can sue to enforce Defendant's waiver of benefits in the present case is still open. *See Estate of Lundy v. Lundy*, 352 P.3d 209, 213-14 (Wash. Ct. App. 2015) (recognizing that "in the context of waiver by private agreement between the parties[,]" *Kennedy* still "signals that the propriety of postdistribution claims for ERISA benefits is an open question"), *review denied*, 361 P.3d 746 (Wash. 2015).

{14}     We conclude that Plaintiffs' theory—that Defendant waived his right to the Fidelity plan proceeds in the divorce decree—remains a viable legal theory and a valid claim against Defendant. Taking all facts in Plaintiffs' complaint as true, Plaintiffs have stated a claim under their waiver theory on which they can proceed in this case. Accordingly, we conclude that the district court erred in determining that Plaintiffs could not prevail as a matter of law. Because Plaintiffs have stated a claim against Defendant under the waiver theory, which is sufficient to defeat a Rule 1-012(B)(6) motion, we need not address whether Plaintiffs' other asserted theories are viable. *See Delfino*, 2011-NMSC-015, ¶ 12 ("Dismissal on [Rule 1-012(B)(6)]

grounds is appropriate only if the plaintiff is not entitled to recover under any theory of the facts alleged in their complaint." (alteration, internal quotation marks, and citation omitted)).

{15} We further conclude that the district court erred in setting aside the parties' stipulated agreement. In support of his motion to strike the stipulated settlement agreement, Defendant asserted that he only entered into the agreement because he believed that Plaintiffs had a viable claim to the Fidelity plan proceeds. The district court found that Plaintiffs' claim was not viable, and as a result, it concluded that the stipulated settlement agreement was based on a mistake of law that rendered the settlement agreement unenforceable and that the agreement lacked consideration. Plaintiffs have stated a valid claim and preemption was not a valid basis to set aside the parties' settlement agreement. We therefore conclude that the district court erred in granting Defendant's motion to strike the stipulated agreement since the sole basis for that decision was the district court's erroneous conclusion that Plaintiffs' stated claim was not viable.

**CONCLUSION**

{16} For the foregoing reasons, we reverse the district court's dismissal under Rule 1-012(B)(6), and remand to the district court for further proceedings consistent with this Opinion.

10

{17}   **IT IS SO ORDERED.**

                                                    _____
                                                    **M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Judge**


_____
**TIMOTHY L. GARCIA, Judge**