This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37140**

**VIRGIL MARTINEZ and GLORIA MARTINEZ,**

Plaintiffs-Appellants,

v.

**CHEVRON MINING, INC., PHILLIP A. HOWARD, and JOHN DOES,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sarah C. Backus, District Judge**

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

Bleus & Associates, LLC
George Anthony Bleus
Albuquerque, NM

for Appellants

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Jennifer G. Anderson
Elizabeth A. Martinez
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}**     This appeal asks us to consider whether an employee, who suffered emotional distress after witnessing the death of a coworker, can bring a claim in tort under *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 1, 131 N.M. 272, 34 P.3d 1148 (holding that an employer loses its rights afforded under the exclusivity provision of the Workers' Compensation Act when it "willfully or intentionally injures a worker"). Concluding the amended complaint fails to state a claim that Defendants Chevron Mining, Inc., Phillip A. Howard, and certain John Does intentionally or willfully caused Plaintiff Virgil Martinez (Virgil) to suffer an injury that was otherwise exclusively compensable under the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017), we affirm the district court's dismissal of the amended complaint.

## BACKGROUND

**{2}**     Virgil, along with his wife, Plaintiff Gloria Martinez (Gloria) (collectively, Plaintiffs), filed suit against Defendants. After dismissal of the original complaint, Plaintiffs were permitted to file their first amended complaint, which alleges the following. Virgil was employed at the Questa Mine & Mill in May 2013. The mine was owned and operated by Chevron Mining, Inc., and Howard was the general manager of the mine. During Virgil's shift on May 16, 2013, his coworker, Isaac Garcia, died in a work-related accident when he was crushed by a malfunctioning locomotive after being directed by his supervisor to fix the derailment of a loaded ore car.

**{3}**     Plaintiffs allege that in the time leading up to the accident, numerous employees, including Virgil, voiced concerns to mine supervisors about the defective, unreliable, and unsafe condition of railway couplings, railcar brake lines, locomotive wheels, trolleys, and railway tracks at the mine. Plaintiffs also allege that several employees had been injured as a result of these unsafe conditions. Plaintiffs further allege that Defendants knew they should have replaced unsafe equipment on the trains, but failed to do so. Further, Defendants knew they should have either stopped operations altogether or isolated portions of the track and rerouted production so that they could fix damaged railway tracks.

**{4}**     On the day of the incident, Virgil was operating an electric locomotive pulling several ore-loaded railway cars. After being told by Virgil that one of the railway cars had "derailed," the acting supervisor of the mine instructed Garcia to investigate and fix the derailment. Garcia informed the acting supervisor that the railway coupling had become disconnected and voiced concerns about fixing the derailment. Because he felt Garcia was not properly trained to address the issue, Virgil also expressed concern to the acting supervisor about assigning Garcia to resolve the derailment. Notwithstanding Garcia's and Virgil's objections, the acting supervisor instructed Garcia to fix the derailment.

**{5}**     While he was attempting to fix the derailment, the locomotive malfunctioned and Garcia was pinned between two railway cars. Virgil rushed to Garcia, but was unsuccessful in his attempts to render first aid and assistance. Garcia died as a result of

the injuries sustained during the incident. Plaintiffs sued Defendants, alleging that Defendants' wrongful actions caused Virgil to witness the protracted and painful death of Garcia, resulting in Virgil's emotional distress and Gloria's loss of consortium.

**{6}** Defendants filed a motion to dismiss for failure to state a claim, arguing Plaintiffs' claims were barred by an employer's immunity from tort liability under the Act. Plaintiffs argued that, notwithstanding the Act's provision of immunity from tort liability, their claims were permitted under *Delgado*, 2001-NMSC-034, ¶ 2. The district court disagreed, ruling that "there does not appear to be any authority to support [Plaintiffs'] theory that a count for intentional infliction of bystander emotional distress falls within the *Delgado* exception to the [Act's] exclusivity." Because it was derivative of Virgil's emotional distress claim, the district court also dismissed Gloria's loss of consortium claim. This appeal followed.

## DISCUSSION

**{7}** Plaintiffs raise two issues on appeal. We initially address Plaintiffs' argument that the district court erred in dismissing Plaintiffs' complaint because Virgil's claim for intentional infliction of emotional distress (IIED) satisfies the requirements of *Delgado*, rendering the Act inapplicable. As this issue is dispositive, we need not reach Plaintiffs' additional claim—that Virgil stated a legally sufficient first-party claim for IIED.

### Standard of Review

**{8}** "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Walsh v. Montes*, 2017-NMCA-015, ¶ 6, 388 P.3d 262 (internal quotation marks and citation omitted). "On review, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of the sufficiency of the complaint." *Id.* (internal quotation marks and citation omitted). Our review is limited to a determination of whether "the essential elements prerequisite to the granting of the relief sought can be found or reasonably inferred" from the complaint. *Derringer v. State*, 2003-NMCA-073, ¶ 5, 133 N.M. 721, 68 P.3d 961 (internal quotation marks and citation omitted). "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) is reviewed de novo." *Walsh*, 2017-NMCA-015, ¶ 6 (internal quotation marks and citation omitted).

### Workers' Compensation Exclusivity

**{9}** Plaintiffs argue the district court erred in finding their claims to be insufficient under the *Delgado* exception to the Act's exclusivity provision.[1] *See* § 52-1-8 (providing that an "employer who has complied with [the Act] . . . shall not be subject to any other liability whatsoever for the death of or personal injury to any employee, except as

---

1Defendants make various arguments that Plaintiffs failed to preserve many of the arguments advanced on appeal. Because we conclude Plaintiffs fail to state a *Delgado* claim, we simply assume for purposes of this appeal that Plaintiffs adequately preserved their arguments.

provided in the [Act]"). "The purpose of the Act's exclusivity provision is to achieve balance between injured workers' need for compensation and employers' need to limit liability for work-related injuries." *Richey v. Hammond Conservancy Dist.*, 2015-NMCA-043, ¶ 7, 346 P.3d 1183. However, "[t]he Act makes an exception to the general rule of exclusivity of remedies for events that are not accidents." *Morales v. Reynolds*, 2004-NMCA-098, ¶ 7, 136 N.M. 280, 97 P.3d 612 (alteration, internal quotation marks, and citations omitted). "[W]hen an employer intentionally inflicts or willfully causes a worker to suffer an injury that would otherwise be exclusively compensable under the Act, that employer may not enjoy the benefits of exclusivity, and the injured worker may sue in tort." *Delgado*, 2001-NMSC-034, ¶ 24.

**{10}** Our Supreme Court clarified that an employer willfully causes a worker to suffer injury when:

> (1) the . . . employer engages in an intentional act or omission, without just cause or excuse, that is reasonably expected to result in the injury suffered by the worker; (2) the . . . employer expects the intentional act or omission to result in the injury, or has utterly disregarded the consequences; and (3) the intentional act or omission proximately causes the injury.

*Id.* ¶ 26. The Court explained that the first prong requires that we consider "whether a reasonable person would expect the injury suffered by the worker to flow from the intentional act or omission." *Id.* ¶ 27. The second prong mandates that we evaluate "the subjective state of mind of the . . . employer." *Id.* ¶ 28. And the third prong demands that we examine "the causal relationship between the intent and the injury." *May v. DCP Midstream, L.P.*, 2010-NMCA-087, ¶ 7, 148 N.M. 595, 241 P.3d 193 (internal quotation marks and citation omitted). "Not only must a party proffer evidence meeting each of *Delgado*'s three elements, but they must also demonstrate their opponent acted unconscionably and with a comparable degree of egregiousness as the employer in *Delgado*." *Pearson v. Johnson Controls, N. N.M., LLC*, 2011-NMCA-034, ¶ 15, 149 N.M. 740, 255 P.3d 318 (internal quotation marks and citation omitted); *see also id.* ¶ 19 (characterizing the *Delgado* exception as a "narrow exception").

**{11}** Defendants contend that the allegations in the first amended complaint fail to meet the foreseeability and proximate cause requirements of *Delgado*. For the reasons that follow, we agree. In evaluating an employer's right to enjoy the benefits of exclusivity, "the critical measure for *Delgado* claims is whether the employer has, *in a specific dangerous circumstance, required the worker to perform a task* where the employer is or should clearly be aware that there is a substantial likelihood the worker will suffer injury or death *by performing the task*." *Richey*, 2015-NMCA-043, ¶ 28 (emphases added) (alterations, internal quotation marks, and citation omitted). Here, Plaintiffs' amended complaint asserts that Garcia, not Virgil, was directed to resolve the derailment, which resulted in Garcia's death. Accepting as true Plaintiffs' assertion that Virgil suffered from mental distress as a result of witnessing the incident and attending to Garcia as he died, *see Walsh*, 2017-NMCA-015, ¶ 6, we nevertheless conclude the

district court did not err because Plaintiffs have failed to allege that Defendants required Virgil to perform a task that meets the requirements of *Delgado*. *See Richey*, 2015-NMCA-043, ¶ 28; *see also Dominguez v. Perovich Props., Inc.*, 2005-NMCA-050, ¶¶ 10, 19, 21, 137 N.M. 401, 111 P.3d 721 (relying on the federal district court's interpretation of *Delgado*'s first prong as "requiring general foreseeability," which involves an examination of whether "the *assignment of tasks to the plaintiff* was . . . reasonably expected to result in the [plaintiff's injury]" (emphasis added)).

**{12}** While Virgil does allege that Defendants, despite knowing the health and safety hazards, "ordered" him and other employees to continue to work with the defective, unreliable, and unsafe locomotive ore cars and to engage in activities Defendants knew or should have known would likely lead to death or great bodily harm, these allegations are insufficient, as they do not identify "a specific dangerous circumstance" in which Defendants required Virgil "to perform a task" that was likely to result in Virgil's injury or death. *See Dominguez*, 2005-NMCA-050, ¶ 22. Instead, Plaintiffs' claim seems to be that by requiring Virgil to perform his job at all, Defendants "knew or should have known" it was likely that Virgil would suffer injury or death. Absent a "specific dangerous circumstance," these allegations are insufficient to state a claim under *Delgado*. *See May*, 2010-NMCA-087, ¶ 13 ("[H]aving an employee perform a routine, familiar task which he had performed before is not the same as sending an employee to face certain injury. The absence of safety measures by itself demonstrates neither intent nor an inherent probability of injury[.]").

**{13}** Plaintiffs further argue the district court erred in ruling they did not sufficiently state a claim under *Delgado* because the district court misconstrued their IIED claim as a third-party, rather than a first-party, claim. Their argument mischaracterizes the basis for the district court's order. The district court based its decision not on the nature of Plaintiffs' IIED claim, but on the extent to which *Delgado* contemplates whether claims made by witnesses to intentional or willful injuries to another employee fall outside the scope of the Act's exclusivity. We conclude Plaintiffs' amended complaint did not sufficiently state a claim under *Delgado*, and the district court did not err in granting Defendants' motion to dismiss.[2]

**CONCLUSION**

**{14}** For the foregoing reasons, we affirm.

**{15} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

---

2We recognize that Plaintiffs filed a motion to reconsider, arguing that under *Baldonado v. El Paso Natural Gas Co.*, 2008-NMSC-005, 143 N.M. 288, 176 P.3d 277, "bystander plaintiffs are entitled to recover under *Delgado* for severe emotional distress brought about by intentional conduct—or, by reckless conduct where a 'special relationship' exists between the parties." The district court denied Plaintiffs' motion. In light of our ruling that Plaintiffs failed to identify a "specific dangerous circumstance" in which Defendants required Virgil to "perform a task," we need not address Plaintiffs' claims about the applicability of *Baldonado*.

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**